IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SANDRA SCHULTZ-WELLER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 2:08-CV-0170 |
| v. | : | |
| | : | Judge Algenon L. Marbley |
| NATIONWIDE MUTUAL INSURANCE | : | |
| CO., | : | Magistrate Judge King |
| | : | |
| Defendant. | : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendant Nationwide Mutual Insurance Company's ("Defendant") Motion for Summary Judgment. Defendant moves for summary judgment on Plaintiff Sandra Schultz-Weller's ("Plaintiff) complaint. In her complaint, Plaintiff alleges that: 1) Defendant owes her a fiduciary duty under 29 U.S.C. §1104(a)(1), and that as a result of Defendant's breach of fiduciary duty, Plaintiff is entitled to a reinstatement of the promised benefit under 29 U.S.C. §1132(a)(3); and 2) under ERISA, 29 U.S.C. § 1132(a)(1), Defendant should be estopped from reducing the amount of her monthly pension payment because she would not have retired had she known her monthly benefits would be $2,439.09 rather than $2,613.38. Defendant seeks summary judgment based on a Release Agreement Plaintiff signed in December of 2003, and in the alternative because: 1) the relief sought by Plaintiff on her breach of fiduciary duty is not permitted by statute; and 2) a claim for promissory estoppel related to pension benefits is not recognized under Sixth Circuit precedent. For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**.

## II. BACKGROUND

## A. FACTUAL BACKGROUND

*1. Plaintiff's Employment Leading Up to Retirement*

Plaintiff is currently a participant in the Nationwide Retirement Plan ("the Plan"). From 1956 until March 2004, Plaintiff was an employee at Nationwide Mutual Insurance Company ("Nationwide"). During her career at Nationwide, Plaintiff held various clerical and secretarial positions. In 2002, Nationwide began discussions to transition the main office from Columbus, Ohio to Luxembourg. As a result of this transition, Plaintiff was given a Retention Bonus Agreement, which offered her additional compensation if she remained employed with Nationwide through the transition period. During the 2003 fiscal year, Plaintiff received a retention bonus payment of $14,437.

In October 2003, Plaintiff turned 65 and became eligible for full retirement under Social Security. In August 2003, Plaintiff discussed retirement with her supervisor and drafted a memorandum for his signature indicating that she wanted to retire effective February 1, 2004. On December 10, 2003, pursuant to a request from her and her supervisor, Plaintiff received a "60-day letter" indicating that Plaintiff's position would be eliminated on February 4, 2004.

*2. Retirement Benefits and Release*

In December of 2003, Plaintiff received a Nationwide Retirement Plan Pension Calculation Statement and a Plan Pension Authorization Form (both dated December 12, 2003). The Calculation Statement informed Plaintiff that her straight life annuity benefit was calculated as $2,613.38 monthly, and included a warning that once the calculation data was final, the benefit amount could be recalculated. Plaintiff signed the Authorization Form on December 29,

2003, which stated: "I have elected the Straight Life Annuity to commence on March 28, 2004. This payment option pays $2,613.38 to me. This amount may change based on final data." Pl. Dep. Ex. 9, p. 4. Plaintiff states that she made the final decision to retire upon signing the Authorization Form.

Additionally, a severance payment was made available to Plaintiff because her position at Nationwide was being eliminated. As a condition to receiving the $28,875.15 severance payment, Plaintiff signed a Severance Payment and Release Agreement ("the Release Agreement"). The Agreement included the following release language:

> "...Employee knowingly and voluntarily releases from liability and forever discharges the Company and all other affiliated, subsidiary, and parent entities...from all actions, claims, damages, and debts, in law or in equity, both known and unknown, including but not limited to, any and all statutory, common law, constitutional and other claims...all claims under federal, state or municipal statutes, regulations or ordinances, claims arising under...the Employee Retirement Income Security Act of 1974...and any other claims arising from or during Employee's employment or termination of employment with the Company until the execution date of this Agreement. This Agreement also includes a release by Employee of any claims for breach of contract, promissory estoppel (promises on which Employee relied)..."

Pl. Dep. Ex. 15.

The Agreement requires Plaintiff to tender back any payments to the Company prior to disputing the enforceability of the Agreement.

Plaintiff's retirement was effective on March 1, 2004, and she began receiving monthly payments in the amount of $2,613.38.

### 3. Reduction of Benefits

In January 2007, Plaintiff received notice that there was an error in the calculation of her monthly pension benefit, and that the correct amount was $2,439.09 rather than the $2662.70 she was then receiving. This error was because the 2003 retention bonus payment was erroneously included by payroll in the calculation of Plaintiff's pension benefit. Under the Plan, beginning on January 1, 2002, retention payments were excluded from the definition of covered compensation.

In a letter dated February 15, 2007, Plaintiff appealed the decision to lower the amount of her pension benefit, arguing that had she known of the lower amount she would have forgone the severance payment and taken advantage of opportunities to continue to work at Nationwide. The Plan Administrator (the Administrative Committee), considered and denied Plaintiff's appeal. The Administrative Committee has discretion to construe and interpret the provisions of the Plan. The Committee decided not to seek recovery of the amount overpaid between March 1, 2004 and January 2007, but to correct the calculation error going forward. Plaintiff received a letter denying her appeal on May 15, 2007, which also informed her of her right to bring a civil action under Section 502(a) of ERISA. On July 23, 2007, Plaintiff received a letter offering further explanation of why her 2003 earnings were higher than other years (because of the retention bonus). Plaintiff does not dispute that the retention bonus was erroneously included in the calculation of her benefit under the terms of the Plan.

## B. PROCEDURAL BACKGROUND

On February 25, 2008, Plaintiff filed her Complaint in this action. On March 16, 2009, Defendants filed a Motion for Summary Judgment. On November 6, 2009, this Court held oral argument on the Motion for Summary Judgment.

## III. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. But the non-moving party "may not rest merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When ruling on a motion for summary judgment, a district court is not required to sift through the entire record to drum up

facts that might support the nonmoving party's claim. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Instead, the Court may rely on the evidence called to its attention by the parties. *Id*.

In ERISA cases, where a plan vests discretionary authority in the plan administrator, the decisions of that plan administrator are reviewed under an arbitrary and capricious standard by the district court. *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998). When applying the arbitrary and capricious standard of review, a court must determine whether the plan administrator's decision was rational in light of the plan's provision. If a reasonable explanation, based on the evidence, is offered for a particular outcome, that outcome is not arbitrary or capricious. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000).[1]

## IV. LAW AND ANALYSIS

### A. SCOPE OF THE RELEASE AGREEMENT

Defendant claims that the Release Agreement signed by Plaintiff upon her receipt of her severance payment, bars both of Plaintiff's claims. Plaintiff alleges that the actions upon which her suit is based occurred after the termination of her employment and the signing of the Release Agreement, and therefore are not covered by the Release Agreement.

Interpretation of a contract is a matter of law, and is, therefore, an appropriate inquiry at the summary judgment stage. *Royal Ins. Co. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421 (6th Cir. 2008). Neither party alleges that the language of the contract is ambiguous or

---

[1] In this case the Plan Administrator does have discretion. The Court does not apply this standard of review, however, because Plaintiff's claims fail as a matter of law, prior to a review by this Court of the Administrative Committee's decision.

that the intent of the Parties is at issue; thus, the Court need not examine extrinsic evidence, and can determine the scope of the Release Agreement from the text alone.

The language of the Release Agreement states that the release covers any "claims *arising from or during* Employee's employment or termination of employment with the Company *until the execution date* of this Agreement." Pl. Dep. Ex. 15 (emphasis added). It is clear from the Release Agreement that any ERISA claims (including promissory estoppel) that occurred during Plaintiff's employment at Nationwide are barred, but that subsequent claims are not. *See Samms v. Quanex Corp*, No. 95-60016, 1996 WL 599821, at *2 (6th Cir. Oct. 17, 1996) (interpreting similar language to permit claims brought after the signing of a release); *see also Sullivan v. Cap Gemini Ernst & Young*, 518 F. Supp. 2d 983, 998 (N.D. Ohio 2007) (questioning whether "whether an individual can prospectively release ERISA claims that accrue after the release is executed."). The issue here is whether Plaintiff's claims did, in fact, arise during her employment and prior to her signing the Release Agreement.

Plaintiff would not have been able to bring her claim for either breach of fiduciary duty or promissory estoppel prior to January 2007 (well after she signed the Release Agreement and retired from Nationwide), because the action that she is contesting did not take place until January 15, 2007. The alleged breach did not occur until Plaintiff received notification of the reduction of benefits. Furthermore, while the original promise on which she relied occurred during her employment, there was no *detriment* until Plaintiff's benefits were reduced. *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 428 (6th Cir. 2006) (explaining the five elements of a promissory estoppel claim under ERISA, where the fifth requires a showing of reliance to a parties detriment). Defendant argues that ERISA equitable estoppel claims occur at the time the

7

obligation is created, and cite to *Moore* for this proposition. The Sixth Circuit in *Moore*, however, did not address the issue of when an estoppel accrues in the context of ERISA, but rather the types of situations in which estoppel actions occur. *Id.* As a result, Defendant's argument that the Release Agreement bars Plaintiff's claims must fail.[2] The Court, therefore, turns to Counts 1 (breach of fiduciary duty) and 2 (promissory estoppel) of Plaintiff's Complaint.

## B. FIDUCIARY DUTY UNDER ERISA

Count 1 of Plaintiff's Complaint alleges that Defendant breached its fiduciary duty to Plaintiff under 29 U.S.C. §1104(a)(1), and that she is entitled to a reinstatement of her pre-2007 benefits under 29 U.S.C. §1132(a)(3). In her response to Defendant's Motion for Summary Judgment, Plaintiff concedes that the relief sought under her fiduciary duty claim is foreclosed by applicable federal law. Pl.'s Mem. Contra Def.'s Mot. Summ. J., fn. 1. Plaintiff is correct in this assertion.

Under ERISA, 29 U.S.C. §1132(a)(3), a participant can seek injunctive or equitable relief. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002). The Supreme Court held in *Great-West* that "[S]uits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages, as

---

[2] Plaintiff further alleges that even if the Release Agreement was applicable to her claims, Defendant's effectively waived the Release Agreement by 1) including language in the appeal denial letter than Plaintiff was free to bring suit under Section 502 of ERISA; and 2) not raising the Release Agreement during the administrative appeal. This argument is unsuccessful given that the language in the appeal denial simply informed Plaintiff that she had a right to sue under ERISA for benefits due to her under the Plan. Plaintiff's claim relates to additional benefits, rather than the benefits to which she is entitled under Nationwide's pension plan. Furthermore, Sixth Circuit case law indicates that failing to raise a release of claims under ERISA as a defense during an administrative process does not bar the use of the defense in Federal Court. *Nicklin v. Henderson*, 352 F.3d 1077, 1082 (6th Cir. 2003). Having found that the Release Agreement does not cover Plaintiff's cause of action here, however, renders the issue of waiver moot.

that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Id.* (internal citations omitted); *see also* **Crosby v. Bowater, Inc. Ret. Plan**, 382 F.3d 587, 594 (6th Cir. 2004) (types of equitable relief available under §1132(a)(3) are limited to injunction, mandamus, and restitution).

In this case, Plaintiff is seeking to compel the Defendant to pay a sum of money, the amount she was told she would receive under her pension benefit in December of 2003. Accordingly, Defendant's Motion for Summary Judgment as to Count 1, breach of fiduciary duty, is **GRANTED**.

### C. PROMISSORY ESTOPPEL UNDER ERISA

Plaintiff brings her promissory estoppel claim under 29 U.S.C. § 1132(a)(1)(B), which states that "[a] civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.* The Supreme Court has held that this provision "says nothing about the recovery of extracontractual damages..." *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985). In this case, the claims for reinstatement of her previous pension are extracontractual damages, as the terms of the Plan do not entitle Plaintiff to the extra benefits she was receiving. Plaintiff does not allege that she is entitled to the $2662.70 she was receiving prior to January 2007 under the terms of the Plan. She also does not contest that the Plan specifically excluded retention bonuses in the calculation of pension amounts. Although Plaintiff's Complaint states that she seeks to "recover the benefits due to her under the Plan," it is undisputed that the monthly benefit she was originally promised are not due to her under the Plan, but rather were the result of a calculation error committed by payroll. This

9

distinction does not, unfortunately, assuage Plaintiff's understandable frustration at losing $200 she planned on receiving each month for many years to come, but does bar relief under 29 U.S.C. § 1132(a)(1)(B).

Moreover, while Plaintiff would be free to amend her complaint to bring the promissory estoppel action under 29 U.S.C. § 1132(a)(3), that claim would also prove unsuccessful. Plaintiff's estoppel claim for pension benefits brought under § 1132(a)(3) would face two obstacles.

First, there is a strong indication that while the Sixth Circuit has recognized estoppel claims under ERISA civil enforcement actions for welfare plans, estoppel claims may not be available for pension plan actions. Although the Sixth Circuit has never directly held that ERISA promissory estoppel is unavailable for pension plans, it has stated that promissory estoppel under ERISA is currently limited to welfare plans. *Bielkie v. General Motors Corp.*, No. 98-1873, 1999 WL 644336, at *2 (6th Cir. Aug. 19, 1999) (citing to *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998), which recognized viability of estoppel claims is limited to welfare plans); *see also Ramsey v. Formica Corp.*, No. 1:04-CV-149, 2004 WL 1146334, at *3 (S.D. Ohio Apr. 6, 2004) (noting that Sixth Circuit dicta" strongly suggests that because of actuarial concerns, [equitable estoppel] should not be applied in cases involving pension plans.").

In *Soper v. Infusion Partners, Inc.*, No. 07CV645, 2009 WL 237313 (S.D. Ohio Jan. 1, 2009), the Southern District of Ohio held that promissory estoppel is not applicable to a pension claim. In that case, a former employee was denied benefits because of her failure to sign a non-compete agreement, despite assurances from an executive that she did not need to sign to receive her pension. *Id.* at *4. Chief Judge Dlott, relying on Sixth Circuit precedent, held that because of

10

concerns that the application of estoppel to pension plans might threaten the actuarial soundness of a plan, the Plaintiff's promissory estoppel claim pursuant to ERISA was improper. *Id.* at \*5 (citing to *Sprague*, *Bielkie*, and *Ramsey*).³ In light of the dicta from the Sixth Circuit and the holding in *Soper*, it is unlikely that Plaintiff's promissory estoppel claim would even be proper. Regardless, the second obstacle to Plaintiff's estoppel claim proves to be a fatal barrier.

Under Sixth Circuit ERISA promissory estoppel doctrine, estoppel is only recognized where the plan in question is ambiguous.⁴ *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 456 (6th Cir. 2003)("A party cannot seek to estop the application of an unambiguous written provision in an ERISA plan"); *Sprague v. General Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998) (estoppel can only be invoked in context of ambiguous plan); *see also Putney v. Medical Mutual of Ohio*, No. 02-3901, 111 Fed. Appx. 803, 807 (6th Cir. Sept. 10, 2004) (Plaintiff did not plead ambiguity in complaint, therefore promissory estoppel claim was properly dismissed); *Bielkie v. General Motors Corp.*, No. 98-1873, 1999 WL 644336, at \*2 (6th Cir. Aug. 19, 1999) (principles of estoppel cannot be applied to vary terms of unambiguous plan). Here, Plaintiff would have needed to plead that the Plan was ambiguous, and the original calculation of benefits relied on an interpretation of the Plan. It is uncontested that the Plan was unambiguous and that the mis-calculation was due to a payroll error and not an interpretation of the Plan. Thus, even if

---

³ Rather than addressing the case law in this District and Circuit, Plaintiff cites to a Second Circuit case, *Schonolz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72 (2nd Cir. 1996), for the proposition that courts recognize promissory estoppel claims for pension benefits, yet *Schonolz,* like the Sixth Circuit in *Sprague*, dealt with a welfare benefit plan. *Id.* at \*75.

⁴This is true in other Circuits as well. *See Livick v. Gillette Co.*, 524 F.3d 24, 30-31 (1st Cir. 2008); *Kane v. Aetna Life Ins.*, 893 F.2d 1283 (11th Cir. 1990).

Plaintiff were able to bring a promissory estoppel claim for pension benefits under ERISA, the claim would fail due to the unambiguity of the Nationwide Plan.

## V. CONCLUSION

For the reasons stated above, this Court hereby **GRANTS** Defendant's Motion for Summary Judgement. This case is **DISMISSED.**

**IT IS SO ORDERED.**

                                        _s/Algenon L. Marbley_
                                        **ALGENON L. MARBLEY**
                                        **UNITED STATES DISTRICT JUDGE**

**DATED: November 20, 2009**